UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAMONT JACKSON,<br><br>            Plaintiff,<br><br>            v.<br><br>MICHAEL J. ASTRUE,[1]<br>Commissioner of Social<br>Security,<br>            Defendant. | Case No. ED CV 06-573-OP<br><br>MEMORANDUM OPINION AND ORDER |

The Court[2] now rules as follows with respect to the five disputed issues listed in the Joint Stipulation ("JS").[3]

---

    [1] On February 12, 2007, Michael J. Astrue became the Commissioner of the Social Security Administration. Thus, Michael J. Astrue is substituted for Commissioner Jo Anne B. Barnhart pursuant to Rule 25(b) of the Federal Rules of Civil Procedure.

    [2] Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the United States Magistrate Judge in the current action. (See Dkt. Nos. 8, 9.)

    [3] As the Court advised the parties in its Case Management Order, the decision in this case is being made on the basis of the pleadings, the

(continued...)

# I.

## DISPUTED ISSUES

As reflected in the Joint Stipulation, the disputed issues which Plaintiff is raising as the grounds for reversal and/or remand are as follows:

1) Whether the ALJ properly considered the opinion of the treating psychiatrist;

2) Whether the ALJ properly considered the State Agency physician's opinion of functional status;

3) Whether the ALJ properly rated the Plaintiff's mental impairment;

4) Whether the ALJ posed a complete hypothetical to the vocational expert ("VE"); and

5) Whether the ALJ made proper credibility findings.

(JS at 2.)

# II.

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. Richardson v. Perales, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 575-76 (9th Cir.

---

[3](...continued)
Administrative Record, and the Joint Stipulation filed by the parties. In accordance with Rule 12(c) of the Federal Rules of Civil Procedure, the Court has determined which party is entitled to judgment under the standards set forth in 42 U.S.C. § 405(g).

1988).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401 (citation omitted).  The Court must review the record as a whole and consider adverse as well as supporting evidence.  Green v. Heckler, 803 F.2d 528, 529-30 (9th Cir. 1986).  Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld.  Gallant v. Heckler, 753 F.2d 1450, 1452 (9th Cir. 1984).

## III.

## DISCUSSION

### A. The ALJ Properly Considered the Opinion of the Treating Psychiatrist.

On December 30, 2003, Dr. Khushro Unwalla, Plaintiff's treating psychiatrist during his hospitalization from December 24, 2003, through December 30, 2003, diagnosed Plaintiff on discharge with "Schizophrenia, paranoid type," and assigned a Global Assessment of Functioning ("GAF") score of 45.  (Administrative Record ("AR") at 158.)  A GAF score of 45 falls within the "serious symptoms" category, described as "(suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." American Psychiatric Association:  Diagnostic and Statistical Manual of Mental Disorders 32-34 (American Psychiatric Ass'n ed., 4th ed. 2000) ("DSM-IV"). Dr. Unwalla referred Plaintiff to a clinic for further treatment.  In February 2004, Plaintiff was examined by Ms. Suzanne Nelson, a therapist, who diagnosed him with psychotic disorder, NOS, and polysubstance abuse, and assigned him a GAF score of 48.[4]  (AR at 159, 205-06, 240.)

---

[4] A GAF score of 48 also falls into the serious symptoms category.
(continued...)

Plaintiff contends that Dr. Unwalla was an acceptable medical source and a treating psychiatrist, and the ALJ improperly ignored his diagnosis and GAF score without explanation. (JS at 3.) As a result, Plaintiff claims the ALJ impermissibly and selectively considered the evidence to support his own conclusions. (Id.)

It is well established in the Ninth Circuit that a treating physician's opinion is entitled to special weight, because a treating physician is employed to cure and has a greater opportunity to know and observe the patient as an individual. McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989). "The treating physician's opinion is not, however, necessarily conclusive as to either a physical condition or the ultimate issue of disability." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the record. 20 C.F.R. §§ 404.1527(d), 416.927(d). If the treating physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995); Baxter v. Sullivan, 923 F.2d 1391, 1396 (9th Cir. 1991). If, as here, the treating physician's opinion is controverted, it may be rejected only if the ALJ makes findings setting forth specific and legitimate reasons that are based on the substantial evidence of record. Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Magallanes, 881 F.2d at 751; Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987).

In her decision, the ALJ discussed the records prepared by Dr. Unwalla pursuant to Plaintiff's hospitalization in a psychiatric facility for the period

---

[4](...continued)
There is no dispute that because Ms. Nelson was not an acceptable medical source under the regulations, the ALJ properly discounted her findings. (JS at 3.)

December 24, 2003, through December 30, 2003.  (AR at 13.)  She notes that Plaintiff reported to Dr. Unwalla a "long history of substance abuse," and "reported hearing voices telling him to put his life in order."  (Id. at 13, 158.)  The ALJ also stated that Dr. Unwalla found that Plaintiff had been noncompliant with his medication.  (Id. at 14, 158.)   Plaintiff's primary complaint is that the ALJ failed to consider the GAF score of 45 assessed by Dr. Unwalla.  (JS at 3, 7.)

As to the GAF scores assessed by Dr. Unwalla (45), Ms. Nelson (48), and later, consulting psychologist, Dr. Colonna (60), such scores reflect the "clinician's judgment of the individual's overall level of functioning and include[] psychological, social and occupational functioning" and are not meant to be a conclusive medical assessment of overall functioning, but rather, are only intended to be "useful in planning treatment[,] . . . measuring its impact, and in predicting outcome."  DSM-IV 32-34.

Moreover, the Social Security regulations do not require an ALJ to take the GAF score into account in determining the extent of an individual's disability.  While the score may help the ALJ assess the claimant's ability to work, it is not essential, and the ALJ's failure to rely on the GAF does not constitute an improper application of the law.  Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 241 (6th Cir. 2002) ("While a GAF score may be of considerable help to the ALJ in formulating the [residual functional capacity ("RFC")], it is not essential to the RFC's accuracy.  Thus, the ALJ's failure to reference the GAF score in the RFC, standing alone, does not make the RFC inaccurate.").

The testimony of the medical expert, Dr. Rath, supports the position that the GAF score was not essential to the accuracy of the RFC in this case.  At the hearing, Plaintiff's counsel specifically asked Dr. Rath about the significance of the GAF score of 48 assessed by Ms. Nelson.  (AR at 245.)  Dr. Rath testified that the GAF of 48 "could well be accurate" as of February 12, 2004, but that its

accuracy was reflective of the fact that Plaintiff was not taking his medications at that time. (Id.) The Commissioner's regulations provide that more weight is given to longitudinal opinion evidence. 20 C.F.R. § 416.927(d)(2). Like Ms. Nelson's GAF score, Dr. Unwalla's December 30, 2003, discharge summary, including his GAF opinion, was a "snapshot" assessment of Plaintiff's condition with very little probative value to Plaintiff's condition over the course of the statutorily mandated twelve-month period. See 42 U.S.C. § 423(d); 20 C.F.R. §§ 416.905, 416.927(a). Moreover, Dr. Rath also noted that as of June 2004, Dr. Colonna, who conducted a complete psychological evaluation of Plaintiff, assessed a GAF score of 65 at that time. (AR at 241.) Thus, the longitudinal evidence indicates improvement from Dr. Unwalla's earlier assessment.

Based on the above discussion, the ALJ did not err in failing to rely on any of the GAF scores, including Dr. Unwalla's, in determining Plaintiff's RFC.

**B.     The ALJ Properly Considered the State Agency Physician's Opinion of Functional Status.**

On June 29, 2004, the State Agency physician, Dr. Tailijian, performed a psychiatric review of Plaintiff. Dr. Tailijian completed a "Psychiatric Review Technique" form ("PRTF"), and a "Mental Residual Functional Capacity Assessment" ("MRFCA"). (Id. at 173-90.) On the PRTF, he indicated that he found Plaintiff "mildly" restricted in activities of daily living, and "moderately" limited in maintaining social functioning, concentration, persistence or pace. (Id. at 183.) On the MRFCA, he also indicated that Plaintiff is "moderately" limited in the ability to understand and remember detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, be punctual within customary tolerances, interact appropriately with the general public, respond appropriately to changes

in the work setting, complete a normal workday and workweek without interruptions from psychological based symptoms, and perform at a consistent pace without an unreasonable number and length of rest periods. (Id. at 188.) Dr. Tailijian concluded that Plaintiff had the functional capacity to "understand, remember, & carry out a 3 step command [with] simple instructions [with] moderate social contact." (Id. at 189.)

Although the ALJ acknowledged Dr. Tailijian's conclusion, Plaintiff nevertheless complains that the ALJ failed to discuss "all of the highly relevant aspects of Dr. Tailijian's functional assessments" and that the assessments "must be properly considered because [they] significantly impact[] the Plaintiff's vocational capabilities." (JS at 8.) Apparently, Plaintiff contends that the ALJ's failure to mention each of the limitations set forth in the PRTF or the MRFCA constituted a rejection of that opinion and was error. (Id. at 9.) This Court disagrees.

The ALJ concluded that Plaintiff's mental impairments were severe. (AR at 16.) She also determined that Plaintiff should avoid unprotected heights, and dangerous and fast moving machinery, but that he could perform simple, repetitive 2-3 step tasks in a habituated work setting, with no hypervigilence required, and that he should not be in charge of safety operations. (Id. at 15-16.) She also found that Plaintiff could do high production, quota or assembly line work if rote or repetitive. (Id.) These findings are not inconsistent either with Dr. Tailijian's PRTF or MRFCA, or with his functional capacity assessment. Therefore, the ALJ did not reject Dr. Tailijian's opinion, and Plaintiff's contention is without merit.

**C.   The ALJ Properly Rated the Plaintiff's Mental Impairment.**

Plaintiff claims that because the ALJ failed to properly consider the opinions of Drs. Unwalla and Tailijian, she did not properly rate Plaintiff's mental impairment. (JS at 11.) He specifically contends that the ALJ's failure

to rate and discuss the claimant's functional limitations in activities of daily living, social functioning, and concentration persistence or pace, as being none, mild, moderate, marked, or extreme, and also rate Plaintiff's episodes of decompensation, was error. (Id.) The Court disagrees. However, even if there was error, that error was harmless.

Where, as here, there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must supplement the five-step sequential evaluation process with additional regulations dealing specifically with mental impairments. Maier v. Comm'r of Soc. Sec. Admin., 154 F.3d 913, 914 (9th Cir.1998) (per curiam). Specifically, the ALJ must determine whether the severity of the claimant's functional limitations are incompatible with the ability to work by ranking the severity of the claimant's deficiencies (none; slight; moderate; marked; extreme) in three different categories (daily living; social functioning; concentration, persistence, or pace), and indicate the number of episodes of decompensation (none; one or two; three; four or more). 20 C.F.R. § 416.920a. Generally, if the claimant's mental impairment meets part A of a specific listing and the ALJ finds that a claimant's functional limitations are at the extreme or marked level in two of the four categories, then the claimant meets or exceeds the listing. See, e.g., 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.03(B). The functional limitations are not an RFC assessment, but only are used to assess the severity of a claimant's alleged mental impairment. See Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34,474, 34,477 (1996) ("[T]he limitations identified [in the PRTF] are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.") (emphasis added).

In this case, the ALJ found that Plaintiff's substance induced psychosis with a history of polysubstance abuse and borderline intellectual functioning was considered severe based on the requirements in the regulations. (AR at 16.)

However, the ALJ concluded that the impairments did not meet or medically equal any of the listed impairments. (Id.) As discussed previously, in making this determination, the ALJ relied on the testimony of medical expert, Dr. Rath, as well as on the reports of Dr. Unwalla, Dr. Tailijian, the State Agency psychiatrist, and the psychological evaluation of Dr. Colonna. No physician, treating or otherwise, found Plaintiff to be functionally mentally impaired at the extreme or marked levels. Drs. Tailijian and Rath assessed only mild or moderate limitations. (Id. at 183, 239.)

Although the ALJ did not specifically state that she was incorporating the functional assessments of Dr. Tailijian or Dr. Rath, it is clear from her resulting decision that she considered and relied upon these functional assessments and the doctors' opinions in determining whether Plaintiff's impairments met or equaled a listing. Thus, even if it was error not to specifically incorporate her functional assessment findings in the decision, any error was harmless because her findings were consistent with the doctors' assessments and substantial evidence of record. Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1990) (harmless error rule applies to review of administrative decisions regarding disability).

**D.    The ALJ Posed a Complete Hypothetical to the VE.**

Plaintiff claims that the ALJ failed to incorporate into the hypothetical question she posed to the VE Plaintiff's moderate limitations in social functioning, and concentration, persistence, or pace, as determined by Dr. Tailijian. (JS at 14.) Plaintiff contends that if the moderate functional limitations had been included, the vocational base was "likely to be significantly diminished."[5] (Id. at 15.)

---

[5] The VE opined that based on the hypothetical, Plaintiff could do the
(continued...)

As previously discussed, the functional limitations are not an RFC assessment, but only are used to assess the severity of a claimant's alleged mental impairment and, therefore, the information did not need to be posited in the hypothetical to the VE. See Social Security Ruling ("SSR") 96-8p, 61 Fed. Reg. 34,474, 34,477 (1996) ("[T]he limitations identified [in the PRTF] are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process.") (emphasis added).

As discussed, the ALJ determined that Plaintiff suffered from a medically determinable severe mental impairment. She also determined that although the impairment was severe, it did not meet or equal a listed impairment. (AR at 16.) As such, the PRTF information did not need to be included in the hypothetical. Moreover, even assuming the limitations should have been included in the hypothetical, the ALJ's RFC assessment essentially took the limitations into account when she found Plaintiff limited to simple, repetitive tasks in a habituated work setting, with no hypervigiligence required, including production, quota, or rapid assembly line-type work – findings which were included in the hypothetical. (Id. at 16, 246-47.)

E. **The ALJ Made Proper Credibility Findings.**

With respect to Plaintiff's credibility, the ALJ concluded that "the claimant's testimony and evidence, although appearing sincere, is not fully credible regarding the extent, intensity and duration of the alleged subjective symptoms and functional limitation and restrictions." (Id. at 15.) Plaintiff contends the ALJ failed to specify which portions of Plaintiff's testimony and

---

[5](...continued)
full range of unskilled work, as not many unskilled jobs "require any of the things that were precluded." (AR at 247.) The VE noted that besides his prior job as a warehouse worker, Plaintiff would be able to work as a cleaner of manufactured buildings and as a kitchen helper. (Id.)

evidence she found not fully credible. (JS at 17.) He also claims the ALJ failed to provide clear and convincing reasons for rejecting Plaintiff's testimony and evidence. (Id. at 18.) The Court disagrees.

Plaintiff alleged disabling symptoms in his April 2004 disability report and daily living questionnaires. (See, e.g., AR at 80, 96-101.) There he mentioned that his medicine made him drowsy, he cannot do routine household chores, cannot make change, and cannot shop by himself. (Id. at 97.) He also claimed to hear voices and have difficulty concentrating and remembering things. (Id. at 80, 97, 100.) In contrast, at the October 2005 hearing, he testified that he had not heard voices since 2003 when he started taking "pills." (Id. at 238.) Plaintiff also testified that if the temporary agencies would take him, he would be able to work, doing his prior job as a truck loader. (Id. at 232-33.)

In assessing the credibility of allegedly disabling subjective symptoms, an ALJ may properly consider a wide variety of things including: "[t]he nature, location, onset, duration, frequency, radiation, and intensity" of any pain or other symptoms; "[p]recipitating and aggravating factors;" "[t]ype, dosage, effectiveness, and adverse side-effects of any . . . medication;" "[t]reatment, other than medication;" "[f]unctional restrictions;" "[t]he claimant's daily activities;" "unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment;" and "ordinary techniques of credibility evaluation." Bunnel v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991) (en banc) (citations omitted); see also Soc. Sec. Ruling 96-7p;[6] 20 C.F.R.

---

[6] The Ruling lists factors to be considered such as: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain and other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any
(continued...)

404.1529 (2005).

In this case, the ALJ noted that Plaintiff's mental status examination was "benign" with no evidence of psychosis, attention, or concentration deficits; he had required only one hospitalization during a time when he admitted he was abusing drugs;[7] he was occasionally noncompliant with his prescribed treatment but his symptoms were admittedly well-controlled when he refrained from substance abuse and took his medications; at the hearing, his thoughts "did not seem to wander and all questions were answered alertly and appropriately"; there was no regular usage of strong medication that would significantly impair Plaintiff's ability to do basic work activities; and there was no evidence of any medication side effects. (AR at 14-15.) All of these are clear and convincing reasons for discounting Plaintiff's allegations of disabling limitations.

Based on the foregoing, the Court finds that the ALJ's adverse credibility determination was proper because (a) the discussion of Plaintiff's credibility reflects consideration of the factors set forth in Social Security Ruling 96-7p, and (b) the reasons were supported by substantial evidence and were sufficiently specific to permit the Court to conclude that the ALJ did not arbitrarily discredit Plaintiff's subjective testimony.

---

[6](...continued)
medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. Ruling 96-7p.

[7] Plaintiff testified he has been clean and sober since October 2003. (AR at 231.)

## IV.
## **ORDER**

Based on the foregoing, IT THEREFORE IS ORDERED that Judgment be entered affirming the decision of the Commissioner, and dismissing this action with prejudice.

DATED: April 24, 2008

_____
HONORABLE OSWALD PARADA
United States Magistrate Judge